FANNIE S. DODSON ET AL. v. C. L. FORD ET AL.

Decided April 12, 1902.

**1.—Clerk of Court—Misappropriating Trust Fund—Evidence.**

See evidence of a clerk of court held insufficient to sustain a finding that money deposited with him and adjudged to nonresident defendants in a suit was not in his hands at the time the judgment was rendered, but had been previously embezzled by him, and limitations thus made available by his testimony as a defense in this case.

**2.—Practice on Appeal—Assignment of Error.**

The failure of appellant's assignment of error to specify wherein the evidence is insufficient to support the finding of the trial court is a defect which justice demands to be overlooked in this case, where an officer of a Texas court of justice has misappropriated trust funds and seeks to swear away the rights of nonresidents thereto.

Appeal from Clay. Tried below before Hon. A. H. Carrigan.

*D. W. Doom* and *Chestnutt & Denny,* for appellants.

*R. E. Taylor* and *Allen & Wantland,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—Fannie S. Dodson, W. B. Dodson, and W. B. Dodson, Jr., residents of the State of Pennsylvania, sold·

C. C. Strahan a tract of land in Clay County, Texas, on a credit, reserving the vendor's lien to secure the notes taken for the purchase money. W. B. Dodson, Jr., became insane and was so adjudged in the year 1893, and died in January, 1901, leaving Lucinda Dodson, his widow, and Albert B. Dodson, his son, his only heirs. On November 4, 1895, C. C. Strahan, a resident citizen, brought suit in the District Court of Clay County, Texas, against W. B. Dodson, Jr., and Fannie S. Dodson, heirs of W. B. Dodson, deceased, to cancel these notes, then all past due, upon depositing the money in the registry of the court, and to extinguish the vendor's lien, as provided in article 1504e of Sayles' Statutes. At the same time, through his attorney, he deposited with the clerk of that court, C. L. Ford, the sum of $1782, the estimated amount of what would be due of principal and interest at the rendition of the judgment, but in reality $144 in excess of the true amount. Judgment was rendered as prayed for by Strahan, September 18, 1896, ascertaining the true amount due, reciting that the money was then in the hands of the clerk and directing its payment to the nonresident defendants, who were represented by guardian ad litem. The excess, however, was returned to the attorney for Strahan a few days after the judgment was rendered, but the clerk failed to pay the rest of the money as directed in the decree, or to turn it over to his successor when he finally went out of office in November, 1900. This suit was consequently instituted, July 1, 1901, by Lucinda Dodson, Albert Dodson, and Fannie S. Dodson, against C. L. Ford and the sureties on his three several official bonds, he having held the clerk's office for three successive terms, beginning after the November election in 1894. J. B. Ford was surety on all the bonds and L. S. Spivery on the one given in November, 1896. The district judge, before whom the case was tried without a jury, held that the money was not in the hands of the clerk when the judgment of September 8, 1896, was rendered, but had already been converted to his own use by C. L. Ford, and therefore that the sureties on his official bonds were not liable; and also held that the claim of Fannie S. Dodson against C. L. Ford was barred by limitations, but gave Lucinda and Albert Dodson judgment against C. L. Ford for one-half the amount sued for.

The finding thus made upon which appellants were denied recovery against C. L. Ford's sureties, and in part against C. L. Ford, rests substantially, if not entirely, upon the testimony of C. L. Ford himself, who, referring to the money deposited with him in the original cause No. 1154, by Emmett Patton, Esq., attorney for C. C. Strahan, testified as follows: "I spent said money before the said cause No. 1154 was tried. I placed this money in the Farmers National Bank of Henrietta, shortly after I received it. I drew it out in February, 1896, and spent it shortly after that time. I did not say that I had said money in my possession on the trial of said cause. I probably said that I had received same from Strahan's attorney. I did not inclose this in a sealed package and place it in some safe place. I did not have this money after said trial and did not show the same to Emmett Patton, and he

and I did not count same. I did pay back to Emmett Patton the excess over the amount of money found to be due said Dodsons by the court and the amount he originally paid me; the amount was the difference between $1782 and $1638. I had none of the original money paid me by Patton at that time. The money I paid back to Patton was money I collected as costs, etc. Shortly after the rendition of said judgment I wrote to the clerk of Philadelphia County, Pennsylvania, to know if he knew anything of the Dodsons. He wrote back that he did not know anything of them, that there was no guardianship of said lunatic pending there. Cross-examination: I did keep a trust fund record book, but did not make the entries spoken of by Mr. Patton after the judgment in cause No. 1154. I had spent all of said money before court met in September, 1896."

This testimony makes at least a prima facie case of embezzlement against the witness, but as it was given September 28, 1901, and dated the crime back more than five years, it can hardly be said, in view of the statutes of limitation and his previous testimony to the contrary, to entitle him to the credit of one "that sweareth to his own hurt and changeth not." It was in direct conflict with the solemn recital above mentioned, recorded by the witness as clerk of the court, in the judgment of September 18, 1896, and which was the basis of that decree. It was in direct conflict with the statement of facts filed in that case. It was in direct conflict with the testimony of H. A. Allen, Esq., guardian ad litem for the nonresident defendants, who remembered that C. L. Ford had testified when the original judgment was rendered, as recited therein and in the statement of facts, that he then had the money in his hands. It was in direct conflict with the evidence of Emmett Patton, Esq., attorney for plaintiff in that case, who testified that when he paid the money to C. L. Ford it was placed in an envelope, sealed up, and entry thereof made in his trust fund book and signed officially by C. L. Ford; and who also testified to the fact that C. L. Ford had testified on the trial of the original suit that he then had in his possession the money so deposited with him; and further, that soon after the rendition of the judgment in that case he and Ford counted the package of money in Ford's presence and it contained the amount originally paid him, and another entry was then made in the trust fund book. No trust fund book was ever produced by Ford or turned over to his successor in office, although he admitted that he had one. The books of the Farmers National Bank showed a deposit of $1782 by C. L. Ford on November 19, 1895, which was withdrawn February 19, 1896, which was the only circumstance at all corroborative of the testimony of Ford, and it tended very slightly, if at all, to corroborate him in the all material but very general statement that he spent the money before the judgment was rendered, without naming time, place, or circumstance. He admitted paying back the excess to Patton after the judgment was rendered and also writing to the clerk of Philadelphia County, Pennsylvania, inquiring for the Dodsons. The bare statement of C. L. Ford,

in the face of these well established facts and embarrassing circumstances, especially in view of the irrepressible motive to screen both himself and J. B. Ford, that he had spent the money before the judgment of September 18, 1896, was rendered, should have been discarded by the trial court as not sufficient to warrant the judgment.

The assignment under which the evidence bearing on this, the vital issue in the case, is set out is objected to for not stating "wherein the evidence is insufficient to support the finding of the trial court;" but while it is by no means clear that the objection is not technically well taken, we have concluded that justice demands in this instance that the defect be overlooked, as appellants evidently did not intend to waive this error, and it would not do to allow an officer of a court of justice in Texas receiving a trust fund belonging to nonresidents without their knowledge, as provided in the Texas statute, to misappropriate their money and thus swear away their rights.

The judgment will therefore be reversed and here rendered for all appellants against C. L. and J. B. Ford for the full amount sued for, and affirmed as to other parties.

ON MOTION FOR REHEARING.

We erred in rendering judgment instead of remanding the cause for a new trial, notwithstanding the waiver of the right of trial by jury, as was held in Stevens v. Masterson, 39 Southwestern Reporter, 292, and to that extent the motion will be granted. In other respects it is overruled and the case remanded for a new trial.

We will add, however, that we need not now determine whether it was necessary for the money to be in the registry of the court when the original judgment was entered in order to bind the sureties.

*Reversed and remanded.*

Hunter, Associate Justice, did not sit in this case.